### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **POLYFLOW, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | **CIVIL ACTION NO. 4:15-cv-2817** |
| **v.** | § | |
| | § | |
| **SPECIALTY RTP, LLC AND** | § | |
| **JOHN R. WRIGHT, JR.,** | § | |
| | § | **JURY TRIAL DEMANDED** |
| | § | |
| **Defendants.** | § | |

### PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF MODELS, DEFENDANTS' COMPUTERS, AND DEFENDANTS' TECHNICAL DOCUMENTS

In the course of its business, Plaintiff Polyflow, LLC developed several specific trade-secret, proprietary software models used in Polyflow's pipe rehabilitation and downhole businesses. Defendant Jay Wright stole these models when he resigned from Polyflow in late October 2014 and formed a competing business, Defendant Specialty RTP, LLC. Defendants then used these Polyflow trade-secret models to obtain a contract from ExxonMobil—all while claiming that the Polyflow trade-secret models were Defendants' "proprietary" models. Now—though Defendants continued to use the stolen trade-secret models even *after* Polyflow filed this suit—Defendants refuse to produce Polyflow's models and claim that the models—which Defendants refused to show to ExxonMobil—are not proprietary. Because Defendants are intentionally withholding important evidence, the Court should order Defendants to turn over their computers to an independent expert for a full forensic examination. Such an examination is necessary to ensure the production of Polyflow's trade-secret models and all other records concerning the research and development, design, manufacture, testing, and installation of Defendants' pipe.

599952.2

## FACTUAL SUMMARY

Polyflow has made every effort to avoid raising discovery issues with the Court, but Defendants refuse to comply with their discovery obligations, fail to produce critical documents, and continue to delay and to obstruct this litigation at every turn.

Polyflow manufactures and sells a line of RTP pipes specially formulated for use in modern oil and gas production and transportation.  Compl. ¶ 2.  Defendant Wright is a former President of Polyflow.  *Id.* ¶ 18.  Shortly after resigning from Polyflow, Wright set up Specialty RTP and began competing with Polyflow.  *Id.* ¶ 36.  Based on the Defendants' passing off Polyflow's testing data as their own to potential customers and emails inadvertently sent to Wright's old Polyflow email address, Polyflow determined that Wright and Specialty RTP were likely using Polyflow's confidential and proprietary information to manufacture their own RTP pipe.  *Id.* ¶¶ 42-51.  Polyflow sued Wright and Specialty RTP for breach of his confidentiality obligations, trade-secret misappropriation, and unfair competition under the Lanham Act.

Part of Polyflow's business is the rehabilitation of customers' steel pipelines without the exorbitant expense of removing or replacing the existing pipe.  Instead, Polyflow pulls one or more smaller reinforced thermoplastic pipes (RTP) through the customer's old steel pipe.  But setting up such a project requires specialized expertise and complex engineering calculations. Polyflow created proprietary engineering models to perform the complex calculations required for rehabilitation projects.  The Polyflow models were created using a software program called Mathcad, and Polyflow treats the models—which are not shared outside of the company—as confidential.  Moore Decl. ¶¶ 3-4.

Polyflow uses one model to calculate pressure drop in a pipe.  This "pressure drop" model is used for identifying the proper size RTP pipe for a project.  A user inputs operating parameters that include pipe length, operating pressure, and operating temperature, and the

model outputs a graph comparing Polyflow's Thermoflex RTP pipe with steel pipe.  Moore Decl.

¶ 5.  The graphs look like this:



Ex. A at 7854.



Ex. A at 7854.

Polyflow uses a second model to calculate the total force required to pull one of its RTP

pipes through the existing steel pipe.  An understanding of the pull force required for a specific

project is critical to answering the proper RTP pipe is selected and to the proper installation of

RTP pipe.  Moore Decl. ¶ 6.  Once a user inputs the specific project variables, Polyflow's pull

force            model            produces            output            in            the            following

format:



Total force required is based on the assumptions that all included angles occur at the end of the pull. This provides a worst case estimate for the total force required.

Total Force Required                $Ft = 1.606 \times 10^3 \, lbf$

Minimum Bend Radius in System       $Rc = 4.246 \, ft$          __No Factor of Safety__
                                                                        __Applied!__

Ex. B at 6299.

While employed by Polyflow, Defendant Jay Wright had access to and copies of these

and other Polyflow trade secret models.  Moore Decl. ¶ 8.

To uncover the extent to which Defendants used (and are using) Polyflow's trade secrets

and confidential information, Polyflow asked Defendants to produce documents reflecting the

research and development, design, construction, specifications, testing, and installation of their

RTP pipes.  (Ex. C at 6-7.).  Further, Polyflow requested production of "[a]ll software programs

used to develop or determine the characteristics of and/or manufacturing specifications for any of

Defendants' products."  *Id.*  Polyflow also requested production of all Polyflow documents.  Ex.

D at 7 (RFP 53).

Defendants initially objected to Polyflow's requests for production and informed

Polyflow that they would not produce the requested technical documents and information.  *See*

Ex. E at 4 (listing Defendants' objections to requests for production 6, 8, 11, and 16; Ex. F

(summarizing Defendants' position that they will not produce documents responsive to requests

4

for production seeking documents reflecting the design, construction, specifications, and testing

of their RTP pipes).  Defendants also responded that they had no responsive software programs.

Ex. E at 7.

After Polyflow drafted a motion to compel and shared it with Defendants' counsel,

Defendants relented and agreed to begin producing some documents and technical information

reflecting the research and development, design, construction, specifications, testing, and

installation of their RTP pipes.  But, even though Defendants represented to ExxonMobil that

they had (and were using) proprietary models, Defendants still refuse to produce their models in

this litigation.  Ex. G ("Peter [Han] has the model . . . .  He reiterated again that he will not give

us the model . . . ."); Ex. H ("RTP's model is proprietary . . . ."); and Ex. I ("[Specialty RTP] had

an issue with sharing more information [about its modeling methodology], as they treat that

scope as company's proprietary.").  And Defendants' production of technical documents remains

woefully inadequate because it includes no information about Defendants' research and

development efforts.

Even though Defendants have refused to produce *any* models, documents subpoenaed by

Polyflow confirm that Defendants have been using models that produce the same output as

Polyflow's models.  For example, Defendants included this chart in a March 2015 presentation to

ExxonMobil:



Ex. J at 1918.  And Defendants submitted a February 2015 quote to ExxonMobil using this chart:



Ex. K at 0689.  A side-by-side comparison shows that Defendants were using a model that generates identically formatted output.    But Defendants' version replaced Polyflow's "Thermoflex" trademark with the word "RTP":

| Polyflow's model output | Defs.' model output |
|---|---|
|  | |

Similarly, Defendants submitted "pull force" model output to ExxonMobil that is identical in format to the output produced by Polyflow's model.  Defendants' March 2013 presentation to ExxonMobil contains three "pull force" model outputs, which are formatted identically—word-for-word—to the output from the Polyflow model:



Ex. J at 1956.  The same is true for model output provided to ExxonMobil on March 12, 2015

and April 7, 2015.



Ex. L at 3390.



Ex. M at 0539.

In fact, Defendants continued to use the models stolen from Polyflow *even after they
learned of this lawsuit*.[1]  In November 2015, Defendants provided the following model output to
ExxonMobil:

---

[1] Counsel for Defendants received a copy of Polyflow's complaint on October 5, 2015.  Ex. N.



Ex. O at 5151.



Ex. O at 5154.

Based on this information, Polyflow demanded production of all models in Defendants' possession.   Exs. P, Q, and R.   Defendants originally claimed that they had produced all technical information related to their products.   Ex. S.   That representation was false; Defendants have never produced a single model.   **Defendants now admit that they have been using**

9

**Polyflow's models.**  *See* Ex. T.  But despite using the models in November 2015—after this lawsuit was filed—Defendants still have not produced any models.  If Defendants no longer have the models, then they have failed to preserve all relevant documents and information, and Polyflow will move for sanctions and an adverse inference instruction.

Defendants' repeated obstruction and failure to comply with their discovery obligations warrants the Court's involvement.

## ARGUMENT

**I.      Given Defendants' discovery abuses, the Court should compel Defendants to produce the missing Polyflow models as well as the computers used by Jay Wright, Peter Han, and Theirry Prast.**

Under Rule 37(a)(3)(B), "a party seeking discovery may move for an order compelling production against another party when the latter has failed to produce documents requested under Federal Rule of Civil Procedure 34."  *Areizaga v. ADW Corp.*, 314 F.R.D. 428, 433 (N.D. Tex. 2016).  Defendants admit using Polyflow's models.  Defendants used those models after this litigation was filed.  But Defendants have failed to produce them.  The Court should order the models produced.

Given Defendants' behavior, the Court should also order production of Defendant's computers (or forensic images of the computer hard drives) for analysis.  In these specific circumstances, an order compelling production of devices likely to contain responsive documents is justified because "the record reflects a history of incomplete and inconsistent responses to plaintiff's production requests."  *Jacobson v. Starbucks Coffee Co.*, 2006 WL 3146349, at *7 (D. Kan. Oct. 31, 2006) (ordering production of computer or mirror image of hard drive because of party's failure to review device and "other questionable discovery responses").

Here, Defendants' discovery responses and production of documents are demonstrably incomplete.  Defendants have admitted having and using Polyflow's proprietary models.

10

Defendants represented to ExxonMobil that these were *Defendants' proprietary models*.  And Defendants' initially denied having any software programs used to determine the characteristics of Defendants' products.  That response was false, but Defendants still refuse to produce the stolen Polyflow models Defendants have been using.  An order compelling Defendants to produce either the computers used by Jay Wright, Peter Han (a Specialty RTP employee who repeatedly provided model output to ExxonMobil), and Thierry Prast (Specialty RTP's field engineer who began working for Specialty RTP while still employed by Polyflow) or forensic images of those computers for inspection and searching is justified for this reason alone.

An order compelling production of Defendants' computers is also appropriate because Defendants have admitted using Polyflow's computer models, which are only stored and used on a computer.  "[A]llegations that a defendant downloaded trade secrets onto a computer provide a sufficient nexus between plaintiff's claims and the need to obtain a mirror image of the computer's hard drive."  *M-I L.L.C. v. Stelly*, 2011 WL 12896025, at *2 (S.D. Tex. Nov. 21, 2011) (ordering production of forensic images of Defendants' computers). Defendants' computers are "the most likely places [Defendants] would have downloaded or stored the data" stolen from Polyflow.  *Frees, Inc. v. McMillian*, 2007 WL 184889, at *2 (W.D. La. Jan. 22, 2007) (ordering production of laptop and personal computer hard drive because they were the most likely places that data in question would have been stored).

Polyflow's Mathcad models are trade secrets.  These models provide Polyflow an advantage in the market place, and Polyflow's competitors do not have the same models. Polyflow developed them internally—hiring a University professor to create them—and does not share them outside the company.  Moore Decl. ¶¶ 3-7.  ExxonMobil concluded that replicating

the development of only one of Polyflow's models—the "pull force" model—would cost $50,000 to $100,000.  Ex. H.

**II.     The Court should also order production of all information related to the research and development, design, construction, specifications, testing, and installation of Defendants' RTP pipe.**

Polyflow requested that Defendants produce documents reflecting the research and development, design, construction, specifications, testing, and installation of their RTP pipes. (*See* Ex. C at Req. Nos. 6, 8, & 11.)  Defendants have produced virtually no documents showing the process by which Defendants developed and designed the RTP pipe in the space of only a few months.  For example, Defendants have not produced any contemporaneous notes or engineering calculations.  These are the types of documents and information one would expect to see in Defendants' document production had Defendants actually designed a new product from scratch instead of stealing Polyflow's confidential and trade secret information.   The Court should order Defendants to produce all such information.

## CONCLUSION

For the foregoing reasons, the Court should grant Polyflow's motion to compel and order Defendants to (1) produce all models in Defendants' possession (including any and all Polyflow Mathcad models or models copied from Polyflow's Mathcad models); (2) produce each computer used by Jay Wright, Peter Han, and Thierry Prast for forensic examination; and (3) produce all documents reflecting the research and development, design, construction, specifications, testing, and installation of Defendants' RTP pipes.

Respectfully submitted,


/s/  Jeff Potts
Jeff Potts (attorney-in-charge)
State Bar No. 00784781
Federal I.D. No. 16804
Land Murphy
State Bar No. 24058010
Federal I.D. No. 802346
SMYSER KAPLAN & VESELKA, L.L.P.
700 Louisiana, Suite 2300
Houston, Texas 77002
(713) 221-2300 (telephone)
(713) 221-2320 (fax)
jpotts@skv.com
lmurphy@skv.com

ATTORNEYS FOR PLAINTIFF/COUNTER-
DEFENDANT POLYFLOW, LLC and THIRD-
PARTY DEFENDANT JIM MOORE


## CERTIFICATE OF CONFERENCE

I hereby certify that Plaintiff's counsel repeatedly conferred with opposing counsel in an effort to obtain production of the Mathcad files and technical documents at issue in this motion. Defendants have failed to produce the requested Mathcad files and technical documents.

/s/ Land Murphy
Land Murphy


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been forwarded to all counsel of record by email on November 3, 2016.

/s/ Land Murphy
Land Murphy