Case 4:15-cv-02817   Document 90   Filed on 12/21/16 in TXSD   Page 1 of 11

United States District Court
Southern District of Texas
**ENTERED**
December 21, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| POLYFLOW, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:15-CV-02817 |
| | § | |
| SPECIALTY RTP, LLC, *et al.* | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER ON
PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF MODELS, DEFENDANTS'
COMPUTERS, AND DEFENDANTS' TECHNICAL DOCUMENTS**

Plaintiff Polyflow, LLC ["Plaintiff," "Polyflow"] has brought this action against Defendants Specialty RTP, LLC ["Specialty RTP"] and John R. Wright ["Wright"] [collectively, "Defendants"] for breach of contract, misappropriation of trade secrets, tortious interference with existing and prospective business relationships, trademark infringement, unfair competition, trademark dilution, and false advertising. (Docket Entry #1 ["Complaint"] ¶¶ 60-127). The parties have consented to proceed before a United States magistrate judge for all purposes, including the entry of a final judgment, under 28 U.S.C. § 636 (c). (Docket Entry #19). Before the court is Plaintiff's motion to compel production of Defendants' software models, computers, and technical documents. (Plaintiff's Motion to Compel Production of Models, Defendants' Computers, and Defendants' Technical Documents ["Motion"], Docket Entry #76). Defendants have responded in opposition to the motion, and Plaintiff has replied. (Response to Motion to Compel Production of Models, Defendants' Computers, and Defendants' Technical Documents ["Response"], Docket Entry #82; Plaintiff's Reply in Further Support of Its Motion to Compel Production of Models, Defendants' Computers, and Defendants' Technical Documents ["Reply"], Docket Entry #88). After considering the

pleadings, the evidence submitted, and the applicable law, Plaintiff's motion is GRANTED, in part, and DENIED, in part.

*Background*

Polyflow operates a steel pipe rehabilitation program, called "ExPERT."[1] (Complaint ¶ 13). There are three key components to the ExPERT program: Polyflow's specially-formulated reinforced thermoplastic pipes ["RTP"],[2] "Polyflow's registered trade name and marked 'PullThru' installation process," and Polyflow's engineering team. (*Id.*). The "PullThru" installation process consists of pulling an RTP pipe through an existing steel pipe. (Motion at 2). Polyflow uses Mathcad, an engineering math software, to develop models[3] to perform the complex mathematical calculations necessary for its rehabilitation projects. (*Id.* at 2; Motion, Exhibit ["Ex."] 1 ["Moore Declaration"] ¶ 4). Among Polyflow's models are its "pressure drop" model, and its "pull force" model. (Motion at 2-3). The "pressure drop" model is "used [to] identify[] the proper size RTP pipe for a project[,]"[4] and the "pull force" model is used to "calculate the total force required to pull [an] RTP pipe[] through [an] existing steel pipe."[5] (Motion at 2; Moore Declaration ¶ 6). Jim Moore ["Moore"], Polyflow's CEO, testified that the company does not distribute the models to non-employees,[6] and

---

[1]"ExPERT" is an acronym for "Existing Pipe Enhanced Rehabilitation Technologies." (Complaint ¶ 13).

[2]Polyflow's RTP product is marketed and sold under the federally-registered trademark, "Thermoflex." (Complaint ¶¶ 9, 78)

[3]In his declaration, Moore stated that "Polyflow hired a university professor to create the [] Mathcad models[.]" (Moore Declaration ¶¶ 5-7; Motion at 2).

[4]Variable inputs include the pipe length, the operating pressure, and the operating temperature. (Motion at 2.). The model then produces a graph which compares the RTP pipe with the existing pipe. (*Id.* at 3).

[5]Moore stated that an accurate measure of the pull force required for a specific project is "critical to ensuring [that] the proper RTP pipe is selected[.]" (Moore Declaration ¶ 6).

[6]Defendants allege that a Polyflow employee asked Wright questions about the models after Wright had left Polyflow. (Response at 5, n.1).

that Plaintiff substantially restricts access to those models within the company. (Moore Declaration ¶¶ 5-7; Motion at 2).

Defendant John Wright was the president of Polyflow[7] from April, 2011 to October, 2014. (Complaint ¶¶ 18, 30). During his employment, he had access to "all of Polyflow's confidential and proprietary information," including the "composition and manner of producing" Polyflow's RTP pipe. (Complaint ¶ 34). Wright also reviewed Polyflow's "pressure drop" and "pull force" models, and represented the company in discussions with Exxon about a potential rehabilitation project. (Motion at 4; Moore Declaration ¶8; Complaint ¶ 16).

Wright left Polyflow on October 24, 2014, and he then formed his own company, Specialty RTP, the next month. (Defendants' First Amended Counterclaim Against Plaintiff Polyflow, LLC and Jim Moore ["Counterclaim"] ¶ 14, Docket Entry #72; Complaint ¶ 36). Polyflow views Specialty RTP as a competitor, because it provides consulting and engineering services for the rehabilitation of mature oil and gas wells and pipelines. (Complaint ¶¶ 16, 17). Polyflow alleges that Wright is using its "proprietary materials and process" to manufacture pipes for his own company. (Id. ¶ 39). Wright, on the other hand, insists that Polyflow did not object to his business plans. He contends, in fact, that Polyflow supported the creation of Specialty RTP, because it agreed to supply pipe for a rehabilitation contract that he had previously secured with Exxon. (Counterclaim ¶¶ 22, 25-27).

On September 28, 2015, Polyflow filed this suit against Specialty RTP and Wright, seeking money damages, as well as preliminary and permanent injunctions under the Lanham Act, 15 U.S.C. § 1116. (See Complaint). On August 26, 2016, Defendants filed a second amended answer and counterpetition, stating claims for breach of contract, business disparagement, defamation,

---

[7]Wright is also a trained chemical engineer. (Complaint ¶ 34).

defamation per se, tortious interference with existing and prospective business relationships, and unfair competition against Polyflow and Moore.[8] (Defendants' Second Amended Answer, Affirmative Defenses, and Original Counterclaim Against Plaintiff Polyflow, LLC, and Jim Moore, Docket Entry #63). In the course of discovery, Plaintiff asked Defendants to produce certain models, computers, and technical documents. Defendants, however, have objected to those discovery requests, and refuse to comply.

### Discovery Dispute

Polyflow sent Defendants its requests for production of documents on at least three different occasions.[9] In those Requests for Production, Plaintiff has asked that Defendants produce all documents concerning Specialty RTP's research and development, design, and construction practices, as well as any records that relate to its pipe specifications, testing, and installation methods. (Motion, Ex. C at 6-7). Polyflow has also called for Defendants to produce "[a]ll software programs used to develop or determine the [] manufacturing specifications for any of Defendants' products[.]" (*Id.* at 6). Polyflow has further asked Defendants to produce "[a]ll Polyflow documents[]" in their possession. (Motion, Ex. D at 7). Defendants have filed specific objections to Polyflow's Requests for Production, claiming that the documents sought are "outside the scope of Plaintiff's claims," and, as such, are irrelevant to the litigation. (Motion, Ex. E at 6-7, 8). Defendants also claim that they have no software programs in their possession that are responsive to Plaintiff's requests. (*Id.* at 6).

Although initially resistant, Defendants have apparently submitted some technical

---

[8]A complete account of the facts and procedural background of this case may be found in the Memorandum and Order on Plaintiff's Motion to Dismiss Defendants' Amended Counterclaim Under Rule 12(B)(6). (*See* Docket Entry #85).

[9]Defendants claim that Polyflow has made four requests for production. (Response at 2). For the sake of simplicity, the court will address all of the Polyflow requests, collectively, as its "Requests for Production."

documents in response to Plaintiff's discovery requests. (Motion at 4-5; *see* Response at 4). These include documents which demonstrate the "die design" for Specialty RTP's pipe, information on the testing of Specialty RTP's pipe and associated materials, as well correspondence with vendors concerning the chemical make-up of their pipe. (Response at 4). Defendants also state that they have made samples of Specialty RTP's pipe available for Polyflow's inspection, but that Plaintiff has not yet taken advantage of that availability. (*Id.*).

In this motion, Plaintiff asks the court to order Defendants to produce the Mathcad models that they used in the Special RTP design process, as well as the computers that were used by John Wright, Peter Han[10] ["Han"], and Theirry Prast[11] ["Prast"]. (*Id.* at 10-12). Polyflow also asks the court to instruct Defendants to turn over "all information related to the research and development, design, construction, specification, testing and installation of [its] RTP pipe." (*Id.* at 12).

***Standard of Review***

Federal Rule of Civil Procedure 26(b) permits a party to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). The information need not be admissible at trial, "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Under Rule 37(a)(3)(B), a party seeking discovery may move for an order compelling production against another party when the latter fails to produce documents requested under Rule 34. FED. R. CIV. P. 37(a)(3)(B)(iv). "The moving party bears the burden of showing that the materials and information sought are relevant to the action, or will lead

---

[10] Peter Han is a Specialty RTP employee "who repeatedly provided model output to Exxon[]." (Motion at 11).

[11] Theirry Prast is an engineer "who began working for Specialty RTP while still employed by Polyflow." (Motion at 11).

5

to the discovery of admissible evidence." *Fidelty and Deposit Company of Maryland v. King-Isles, Inc.*, 2014 WL 12538140, at *1 (S.D. Tex. June 6, 2014). "Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, [] unduly burdensome or oppressive, and thus should not be permitted." *Id.* (citing *Spielberg Mfg., Inc. v. Hancock*, No. 3-07-CV-1314-G, 2007 WL 4258246, at * 1 (N.D. Tex. Dec. 3, 2007)); *see also Briones v. Kinder Morgan, Inc,* No. H-15-2499, 2016 WL 6804862, at *2 (S.D. Tex. Nov. 17, 2016) ("The party resisting discovery must show specifically how each request is not relevant or otherwise objectionable.").

*Analysis*

*Models*

Plaintiff has presented evidence that is sufficient to show that the Mathcad models are relevant to its claims. Polyflow points out that the mathematical models that Specialty RTP presented to Exxon returned outputs identical to those of its own models.(Motion at 5-9; Motion, Ex. G at 2; Motion, Ex. H at 2; Motion, Ex. I at 2). For example, it appears that Specialty RTP's "pressure drop" model yields the exact output that Polyflow's "pressure drop" model yields. (Motion at 6-7). Likewise, a comparison of Specialty RTP's "pull force" model with that of Polyflow's, shows that the models are formatted identically. (*Id.* at 7-9). Plaintiff insists that the correlation between those models is a clear showing that Defendants used its proprietary models to produce pipe for Specialty RTP. (*Id.* at 9-10).

Polyflow also insists that the "stolen models" are relevant to its unfair competition claim, because Defendants' use of the models has "create[d] confusion in the marketplace" regarding

6

Polyflow's ExPERT program. (Reply at 3-4). The court agrees that the models are relevant. If, in fact, Defendants "stole" Plaintiff's Mathcad models, they may have used those models to make misrepresentations regarding the nature of the rehabilitation services that Polyflow and Specialty RTP offer, as well as the relationship between the companies, and the source of Specialty RTP's pipe design. (*See* Complaint ¶¶ 56, 116). Production of the disputed models could establish that Defendants committed an unlawful act, "which interfered with [Polyflow's] ability to conduct its business." *Taylor Pub. Co. v. Jostens. Inc.*, 216 F.3d 465, 486 (5th Cir. 2000) (describing requirements of tort of unfair competition under Texas law). For these reasons, the Mathcad models are important to the matters at issue in this case.

Plaintiff argues further that the models are relevant to its misappropriation of trade secrets claim, because a jury must consider whether the models are confidential, and, if so, whether they are entitled to trade secret protection. (Reply at 4). Defendants respond, however, that the models that Plaintiff has requested fall outside of the scope of discovery, because they pertain to the *installation* of the pipe, rather than to its research, development, and design. (Response at 4-6). Essentially, Defendants contend that Polyflow's trade secret claim is based on its proprietary interest in the RTP pipe *itself*, not on the installation of that pipe. (*Id*. at 5). Defendants also claim that Polyflow is not entitled to the discovery it is seeking, because it has not specifically alleged that the Mathcad models constitute trade secrets. (*Id*. at 6). Defendants are adamant that they have no obligation to produce the items requested.

First, there is no authority to support Defendants' contention that a plaintiff must plead a trade secret complaint with a high level of specificity in order to request documents related to the trade secret alleged. Indeed, the courts in this circuit merely require that a plaintiff identify its trade

7

secrets with "reasonable particularity," so that defendants and courts may efficiently evaluate the relevance of disputed discovery requests.[12] *StoneEagle Services, Inc. v. Valentine*, No. 3-12-cv-1687-P, 2013 WL 9554563, at *2-3 (N.D. Tex. June 5, 2013); *Zenimax Media, Inc. v. Oculus VR, Inc.*, No. 3:14-cv-1849-P, 2015 WL 11120582, at *1 (N.D. Tex. Feb. 13, 2015). Even assuming that a requirement of "reasonable particularity" exists, Polyflow plainly alleges that Wright and Specialty RTP "misappropriated [] [Polyflow's] business by submitting Polyflow's installation manual to the Pipeline and Hazardous Waste Materials Safety Administration[]." (Complaint ¶¶ 58, 67). In fact, throughout its Complaint, Plaintiff references the PullThru installation process as its "intellectual property," and repeatedly alleges that Defendants used that process without authorization in providing Specialty RTP's products *and services*. (*Id.* ¶¶ 81, 86-87, 89, 108) (emphasis added). The Complaint clearly sets out claims for the theft of Polyflow's research and design, as well as for the misappropriation of its installation process. On this record, it is clear that the Mathcad models are relevant to several of Plaintiff's claims. For that reason, the Defendants are ordered to produce the models, within 10 business days.

### *Technical Documents*

Plaintiff also requests that Defendants produce all information related to the "research and development, design, construction, specifications, testing, and installation of Defendants' RTP pipes." (Motion at 12; Motion, Ex. C at 6-7). Defendants claim that they have produced "thousands of pages of correspondence, testing data, and calculations" on those subjects, and that "Plaintiff's

---

[12] In fact the requirement of "reasonable particularity" is not compulsory, and, when invoked, it is withing the court's discretion to implement it as a "special procedure for managing [] difficult [] actions that may involve complex issues[]." FED. R. CIV. P. 16(c)(2)(L). In addition, defendants typically raise this issue before discovery begins, and request that the plaintiff provide "pre-discovery identification" of the misappropriated trade secrets alleged. *Zenimax*, 2015 WL 11120582, at *1.

dissatisfaction" with Specialty RTP's record keeping practices does not merit an order compelling production of documents. (Response at 7). However, the sheer volume of documents produced is irrelevant to whether the documents are responsive to Plaintiff's discovery requests. Just as Polyflow is entitled to production of the disputed models, it is likewise entitled to the production of all technical documents related to those models, as well as to any other information referencing the research and development, design, construction, specifications, testing, and installation of Defendants' RTP pipes. Defendants are ordered to produce all documents responsive to this request, within 10 business days.

### *Forensic Analysis of Computers*

Plaintiff also asks the court to compel production of Defendants' computers, or, in the alternative, forensic images of the hard drives of the computers used by Defendant Wright, Peter Han, and Thierry Prast, for inspection. (Motion at 10-12). Defendants contend, however, that, in this case, an inspection of those computers is an overly burdensome request. (Response at 9-13).

A party may serve a request seeking "to inspect, copy, test or sample [] electronically stored information" that is under the control of its opponent. FED. R. CIV. P. 34(a)(1)(A). However, the information sought must be "relevant to any parties' claim or defense" and "proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). The court must also consider any issues of confidentiality and privacy that may arise from the inspection of a party's electronic information. FED. R. CIV. P. 34 advisory committee's note to 2006 amendment. Indeed, the rules are "not meant to create a routine right of direct access" to electronically stored information, and the court should be careful to "guard against undue intrusiveness." *Id.*[13]

---

[13] The Fifth Circuit has not addressed this issue, directly.

Plaintiff here claims that the computers at issue contain evidence that shows that Defendants stole its proprietary Mathcad models. (Motion at 10-12). Defendants deny that they have any models, contending that they accessed the Mathcad software through a thirty-day trial license, so they can no longer generate files in that format. (Response at 6). Polyflow counters with copies of output from engineering models that Defendants presented to Exxon in February, April, and November of 2015. (Motion at Ex. J-M, O). Plaintiff claims that Defendants have not explained "how they used a 30-day trial of the Mathcad software to run analysis for Exxon[] over the spa[n] of ten months." (Reply at 6). For that reason, Polyflow insists that a forensic examination of the computers is the only means to determine "what Polyflow information exists on Defendants' computers, how and when it was copied there, and how and when Polyflow's information was used" by them. (*Id.* at 7).

Although Plaintiff presents a strong argument in support of allowing a forensic inspection of the computers, the inordinate burden of that request outweighs the benefits of such an order at this time. Allowing Plaintiff to inspect Han's and Thierry's[14] computers would allow it unlimited access to those individuals' personal and professional information. Courts typically require a showing that the responding party has failed to fulfill its discovery obligations before allowing "mirror image" access to its electronic devices. *See, e.g., A.M. Castle & Co. v. Byrne*, Civ. A. H-13-2960, 2015 WL 4756928, at *10 (S.D. Tex. Aug. 12, 2015) (denying plaintiff's request for forensic inspection of electronic devices, because plaintiff had not shown that defendants were in wrongful possession of the documents at issue, and did not provide any expert testimony or other evidence that defendants had been deleting the files sought); *In re Weekly Homes, LP.*, 295 S.W.3d 309, 317 (Tex. 2009)

---

[14] Defendants claim that a vendor has conducted a forensic examination of Wright's laptop, and Plaintiff concedes that an additional examination of that computer is unnecessary. (Response at 3; Reply at 7).

10

(noting that most federal courts require a showing that "the responding party has somehow defaulted on its obligation to search its records and produce the requested data before allowing direct access to "a party's electronic storage device"). Plaintiff here has simply not set out clear evidence that Defendants' have defaulted on their discovery obligation in a manner sufficient to justify such an intrusion into their personal affairs. *Castle*, 2015 WL 4756928, at *10. For that reason, Plaintiff's request for a forensic examination of those computers is denied, as premature, with the right to re-urge it at a later date, if appropriate.

Defendants must produce the Mathcad models at issue. If Defendants fail to comply with that order, the court will reevaluate Plaintiff's request for a forensic inspection of the referenced computers.

In sum, Defendants are ordered to produce all models used in its research and development, design, construction, and installation process. Defendants are likewise ordered to produce all technical documents and information related to the research and development, design, construction, specifications, testing, and installation of Specialty RTP pipes. Plaintiff's request for a forensic inspection of Defendants' computers is denied, at this time.

**Conclusion**

Accordingly, it is **ORDERED** that Plaintiff's motion to compel is **GRANTED**, in part, and **DENIED**, in part.

**SIGNED** at Houston, Texas, this 21st day of December, 2016.

**MARY MILLOY**
**UNITED STATES MAGISTRATE JUDGE**